UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00370-DOC (MLGx) | Date | April 24, 2012 |
|---|---|---|---|
| Title | Buyer's Direct Inc. v. Belk, Inc. and Belk International, Inc. | | |

| Present: The Honorable | Marc L. Goldman, Magistrate Judge | |
|---|---|---|
| Terri Steele | | n/a |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:** In Chambers: Order Granting in Part and Denying in Part Defendants' Motion to Compel

## I. Introduction

In the underlying action filed in the United States District Court for the Eastern District of North Carolina, Plaintiff Buyer's Direct Inc., ("Plaintiff" or "BDI") claims that Defendants Belk, Inc. and Belk International, Inc. ("Defendants" or "Belk") infringed U.S. Design Patent No. D598,183 ("the '183 Patent"), for its "Snoozies" slipper product. On April 8, 2011, Defendants served subpoenas issued by the United States District Court for the Central District of California on third party Quick Patents, Inc. ("Quick Patents"), which acted as BDI's registered patent agent in the prosecution of the application for the '183 Patent before the United States Patent and Trademark Office ("USPTO"). Quick Patents provided certain information in response to the subpoenas, but asserted the attorney client privilege and work product doctrine to much of the information requested. The claim of privilege was supported by a privilege log.

On March 9, 2012, Belk and Quick Patents filed a Joint Stipulation on Belk's Motion to Compel the Production of Documents and Deposition Testimony from Third-Party Quick Patents, Inc. ("Joint Stip."). Belk contests Quick Patents' assertion of privilege and Quick Patents' objections to several of the document requests. A hearing was held on the motion on April 10, 2012. For the reasons discussed below, Belk's motion is GRANTED IN PART and DENIED IN PART.

## II.   Motion to Compel the Production of Documents[1]

Quick Patents has refused to produce most of the documents requested, claiming that the documents are privileged, and has produced a privilege log listing the documents withheld due to privilege. The principal of Quick Patents, Kevin Prince, is not an attorney, but a patent agent registered with the USPTO. In the motion papers, Quick Patents argues that even though it employs no attorneys and did not operate under the supervision of an attorney in the prosecution of the '183 Patent, the documents listed in the log

---

[1] While the title of the motion states that it also seeks to compel deposition testimony from Quick Patents, the parties clarified at the hearing held on April 10, 2012 that the deposition issue is no longer in dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00370-DOC (MLGx) | Date | April 24, 2012 |
|---|---|---|---|
| Title | Buyer's Direct Inc. v. Belk, Inc. and Belk International, Inc. | | |

are privileged because the attorney-client privilege extends to communications between a client and a non-attorney patent agent registered with the USPTO. (Joint Stip. at 21). Belk argues in response that there is no consensus on whether, and to what extent, the attorney-client privilege applies to patent agents, and that this Court should not recognize such a privilege. (Joint Stip. at 17). It further argues that even if such a privilege is recognized, Quick Patents' privilege log fails to make an adequate showing of privilege, and furthermore, that Quick Patents waived their right to assert privilege by selectively producing documents. (Joint Stip. at 16).

Quick Patents also objects to several of the document requests as overbroad and not relevant, and further objects to Belk's request for the file history for the application of the '183 Patent on the basis that it is equally available to Belk through the USPTO. Belk defends its requests as relevant and not overbroad, and contends that Quick Patents' "equally available" objection is improper.

These issues are discussed in turn below.

**A. Extension of the Attorney-Client Privilege to Patent Agents**

As a threshold matter, the Court must decide whether the attorney-client privilege extends to communications between a client and non-attorney patent agent. The attorney-client privilege protects "communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). While traditionally the attorney-client privilege does not cover non-lawyer representatives engaged in legal work, a line of cases holds that there is an exception for registered patent agents representing clients in proceedings before the USPTO.

Courts extending the attorney-client privilege protection to communications with patent agents generally follow the reasoning articulated in *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 393 (D.D.C. 1978), which looked to the Supreme Court's decision in *Sperry v. State of Fla. Ex rel. Florida Bar*, 373 U.S. 379, 384 (1963). In *Sperry*, the Supreme Court considered whether the state of Florida could prevent an authorized agent from representing clients before the USPTO on the grounds that such conduct constitutes the unauthorized practice of law. The Court observed that the relevant federal statutes and regulations expressly permitted both agents and attorneys to engage in practice before the USPTO, and concluded that Florida could not deny the patent agent a right he had been granted by Congress. *Id.* at 384-85. Extending the reasoning of *Sperry*, the Court in *In Re Ampicllin* stated:

> While the denial of the attorney-client privilege to patent agent communications is different from the refusal to allow a patent agent to engage in any patent activities at all, imposing such a limitation on patent agent communications would result in significantly unequal treatment of patent agents and patent attorneys. Congress, in creating the Patent Office, has expressly permitted both patent attorneys and patent agents to practice before that office. The registered patent agent is required to have a full and working knowledge of the law of patents and is even regulated by the same standards, including the Code of Professional Responsibility, as are applied to attorneys in all courts. Thus, in appearance and fact, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00370-DOC (MLGx) | Date | April 24, 2012 |
| Title | Buyer's Direct Inc. v. Belk, Inc. and Belk International, Inc. | | |

registered patent agent stands on the same footing as an attorney in proceedings before the Patent Office. Therefore, under the congressional scheme, a client may freely choose between a patent attorney and a registered patent agent for representation in those proceedings. That freedom of selection, protected by the Supreme Court in *Sperry*, would, however, be substantially impaired if as basic a protection as the attorney-client privilege were afforded to communications involving patent attorneys but not to those involving patent agents. As a result, in order not to frustrate this congressional scheme, the attorney-client privilege must be available to communications of registered patent agents.

81 F.R.D. at 393. Many cases have extended the attorney-client privilege to communications with patent agents based on similar reasoning, noting that patent agents perform the same services as patent attorneys, are licensed, and are subject to the same standards of professional conduct as their attorney counterparts.[2] *See, e.g., Polyvision Corp. v. Smart Techs. Inc.*, No. 1:03-CV-476, 2006 WL 581037 (W.D. Mich. 2006); *Mold Masters Ltd. v. Husky Injection Molding Sys., Ltd.*, No. 01 C 1576, 2001 WL 1268587 (N.D.Ill. 2001); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 304 (E.D.N.Y. 1992); *Dow Chem. Co. v. Atlantic Richfield Co.*, 1985 WL 7199, 227 U.S.P.Q. 129, 133-34 (E.D. Mich. 1985); *Vernitron Med. Prods., Inc. v. Baxter Lab., Inc.*, 1975 WL 21161, 186 U.S.P.Q. 324 (D.N.J. 1975).

However, a split in authority remains, with a number of courts holding that patent agents are not entitled to the protection of the attorney-client privilege. *See, e.g., Park v. CAS Enter., Inc.*, No. 08-cv-0385, 2009 WL 3565293 (S.D. Cal. Oct. 27, 2009); *In re Rivastigmine Patent Litigation*, 237 F.R.D. 69 (S.D.N.Y. 2006); *Agfa Corp.*, No. Civ.A. 00-10836, 2002 WL 1787534, at *2 (D. Mass. Aug. 1, 2002); *Joh. A. Benckiser G.m.b.H., Chemische Fabrik v. Hygrade Food Prods. Corp.*, 253 F.Supp. 999, 1000 (D.N.J. 1966). Courts declining to extend the privilege have noted that the attorney-client privilege should be construed narrowly and that it "is rooted, both historically and philosophically, in the special role that lawyers have, by dint of their qualifications and license, to give legal advice." *Park v. CAS Enter., Inc.*, 2009 WL 3565293, at *2 (quoting *Agfa Corp.*, 2002 WL 1787534, at *2). In *Agfa Corp*, the court also reasoned that while some part of the agent's work is as a legal advisor, "[t]he same could be said, however, for any number of non-lawyer advocates who formally undertake to 'represent' 'clients' before some tribunal and who advise the clients about how the law might apply to or affect the clients' interests." 2002 WL 1787534, at *2.

---

[2] Numerous cases have also noted that communications between a client and patent agent are privileged if the patent agent is working for an attorney. *See, e.g., Park v. CAS Enter., Inc.*, 2009 WL 3565293, at *3 (citing *Baxter Healthcare Corp. V. Fresenius Med. Care Holding, Inc.*, No. C 07-1359, 2009 WL 533126 (N.D. Cal. March 3, 2009)). This situation, however, provides an independent justification for extending the attorney-client privilege to patent agents, and is not relevant here, where Quick Patents was operating without attorney supervision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 12-00370-DOC (MLGx) | Date | April 24, 2012 |
|---|---|---|---|
| Title | Buyer's Direct Inc. v. Belk, Inc. and Belk International, Inc. | | |

The Court is persuaded by the reasoning of the *In re Ampicillin* line of cases that the congressional goal of allowing clients to chose between an attorney and a patent agent representative in proceedings before the USPTO would be frustrated if the attorney-client privilege were not available to communications with registered patent agents. Therefore, the privilege may be invoked over communications between a client and the client's registered patent agent. However, the privilege is limited to communications related to presenting and prosecuting applications before the USPTO, as this is the extent to which Congress has granted patent agents the same status as an attorney representative. Accordingly, communications subsequent to the issuance of a patent are not covered by the attorney-client privilege. *See Polyvision Corp. v. Smart Techs. Inc.,* 2006 WL 581037 at *3.

### B. Adequacy of Quick Patents' Privilege Log

For each entry, the privilege log produced by Quick Patents provides: (1) the Bates range of the document; (2) the names of persons who sent or received the document; (3) the date the correspondence was sent; (4) the nature of the correspondence (i.e. letter or email); (5) boiler plate language stating the document is protected by the attorney-client/work product privilege extended to non-attorney patent agents; and (6) boilerplate language stating either that the correspondence is "re design of the '183 patent" or "re drawings for the '183 patent," or "re the '183 patent." (Decl. Of W. Thad Adams, III, ("Adams Decl."), Ex. 10).

The party asserting the attorney-client privilege bears the burden of showing that the privilege applies to the relevant documents. *Dole v. Milonas,* 889 F.2d 885, 890 (9th Cir. 1989). As the Ninth Circuit stated in *Dole,* a privilege log may be sufficient to meet the requisite burden when it identifies: (1) the attorney and client involved, (2) the nature of the document, (3) all persons or entities shown on the document to have received or sent the document, (4) all persons or entities known to have been furnished the document or informed of its substance, and (5) the date the document was generated, prepared, or dated. *Id.* at 888 n. 3. However, the Ninth Circuit later clarified in *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court,* 408 F.3d 1142, 1149 (9th Cir. 2005) that in determining whether an assertion of privilege is sufficient, courts must also consider "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged."

In *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805 (Fed. Cir. 2000), the Federal Circuit held that technical communications between inventors and patent attorneys relating to the preparation and prosecution of a patent application may be privileged, and that "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." As discussed above, these types of communications are also privileged when made to a registered patent agent. Thus in order to demonstrate that each withheld document is privileged, Quick Patents must show it contains material provided by BDI to Quick Patents "for the purpose of securing primarily legal advice on patentability and legal services in preparing a patent application." *Id.*

While Quick Patents' privilege log contains the information listed in *Dole,* its boilerplate language describing the subject of the communications provides insufficient detail to allow the Court to evaluate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00370-DOC (MLGx) | Date | April 24, 2012 |
|---|---|---|---|
| Title | Buyer's Direct Inc. v. Belk, Inc. and Belk International, Inc. | | |

whether the documents qualify as privileged under *In re Spalding Sports*. Therefore, Quick Patents' current privilege log does not satisfy its burden of showing that the withheld documents are privileged. *See Burlington,* 408 F.3d at 1149. The Court will give Quick Patents the opportunity to produce an amended privilege log, which must provide sufficient detail to allow for a determination of whether the documents are privileged.

### C. Waiver

Belk argues that by "selectively" producing documents QP 0066 and QP 0067, Quick Patents has waived all claims of privilege "as to the timing of the conception, reduction to practice, first offer for sale, first shipment, and all other related issues." (Joint Stip. at 16-17). Documents QP 0066 and QP 0067 appear to reflect initial conversations between BDI and Quick Patents. (Adams Decl., Ex. 8). QP 0066 states that the "First Public Disclosure/offer for sale" of Snoozies was in "9/08." QP 0067 states that the BDI started shipping Snooizes in September 2008. Belk argues that these two dates are inconsistent, since the first public disclosure or offer of sale would have had to occur months before the product was shipped. (Joint Stip. at 16). The "9/08" first offer date is also inconsistent with statements made by BDI's president, Marshall Bank, who testified in another lawsuit that an offer of sale was made to Belk in March or April of 2008. (Joint Stip. at 16).

Quick Patents responds that there has been no waiver because information regarding the first shipment date of the Snoozies product is not privileged since "[a]s Belk's own portion of the joint stipulation admits, Mr. Bank has already previously testified to this very information." (Joint Stip. at 27). It further argues that even if the communications were privileged, Belk has failed to establish the requirements for subject matter waiver. (Joint Stip. at 27-28). It also states that it has already produced all documents showing the date of the first shipment of BDI's Snoozies slipper. (Joint Stip. at 28).

Quick Patents' arguments appear to conflate the 'first offer for sale' date with the 'first shipment' date, as the testimony from Mr. Bank at issue here actually refers to the first offer date and not the first shipment date. (Adams Decl., Ex. 10). To the extent Quick Patents is arguing that there has not been a waiver as to information regarding the first offer date, this argument is not well taken. Under Fed. R. Evid. § 502(a), the attorney-client privilege is waived by disclosures made during a federal proceeding if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together. Here, the first element is satisfied since the disclosure of QP 0066 was intentional and not inadvertent. *See* Fed. R. Evid. § 502(b). Regarding elements two and three, the issue of when the first offer of sale was made is relevant to Belk's claim that the '183 Patent is invalid under 35 U.S.C. § 102(b) because it was "in public use or on sale" more than one year prior to the date of the patent application. The September 2008 date contained in QP 0066 undercuts Belk's claim because it suggests that the first offer for sale was well within the one year period. Therefore, in fairness to Belk, any undisclosed communications in Quick Patents' possession regarding a 'first public disclosure/offer for sale' date should be disclosed so that they can be considered together with the September 2008 date contained in QP 0066.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00370-DOC (MLGx) | Date | April 24, 2012 |
|---|---|---|---|
| Title | Buyer's Direct Inc. v. Belk, Inc. and Belk International, Inc. | | |

However, Belk has not shown that there has been a waiver with respect to any issues beyond the 'first public disclosure/offer for sale' date and 'first shipment' date. As Quick Patents has already disclosed all documents in their possession relating to the first shipment date, Belks' request is GRANTED only insofar as Quick Patents must produce all undisclosed documents relating to the timing of the first public disclosure and first offer for sale.

### D. "Not Relevant" and "Overly Broad" Objections to Document Request Nos. 1, 2, 3, and 9

At the hearing held on April 10, 2012, the parties seemed to have changed their positions regarding Document Request Nos. 1, 2, 3, and 9 since the filing of the Joint Stip. on March 9, 2012. The parties are hereby ordered to meet and confer regarding these requests within 10 days of this order, after which they may schedule a telephone conference with the court to advise whether further briefing or a hearing is necessary to resolve these disputes.

### E. "Equally Available" Objection to Request No. 6

Request No. 6 seeks "the complete file history and related correspondence of Patent 183." Quick Patents states that to the extent it was in possession of these documents, they were already produced, and that the rest are publically available through the USPTO. (Joint Stip. at 33). It objects to the request on the ground that the remaining documents are "equally available" to Belk.

When documents sought from a nonparty are equally available to the propounding party, the nonparty is not required to produce such documents. *See, e.g., Bussiere v. Cano*, No. 1:10-cv-00945, 2011 WL 4529365, at *1 (E.D. Cal. Sept 28, 2011) ("the Court will consider granting such a request [for production of documents from nonparties] only if the documents sought from the non-party are not equally available to Plaintiff"); *Cramer v. Target Corp.*, No. 1:08-cv-01693, 2010 WL 3220335 (E.D. Cal. Aug. 13, 2010) (same). Accordingly, Defendants' motion is DENIED as to Request No. 6.

Initials of Clerk    ts